UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

GLEN ALEBORD,

    Petitioner,

v.

LISA MITCHELL,

    Respondent.

Civil Action No. 14-cv-10493-IT

MEMORANDUM & ORDER

July 11, 2017

TALWANI, D.J.

Petitioner Glen Alebord contends in his <u>Petition for Relief from a Conviction or Sentence by a Person in State Custody</u> [#1] that his conviction and incarceration for second-degree murder violate his rights under the Sixth Amendment to the United States Constitution because the courtroom was closed to the public during jury empanelment for his trial.

The Sixth Amendment to the United States Constitution guarantees that, "[i]n all criminal prosecutions, the accused shall enjoy the right to a . . . public trial." U.S. Const. amend. VI. "[T]he [public-trial] guarantee has always been recognized as a safeguard against any attempt to employ our courts as instruments of persecution. The knowledge that every criminal trial is subject to contemporaneous review in the forum of public opinion is an effective restraint on possible abuse of judicial power." <u>In re Oliver</u>, 333 U.S. 257, 270 (1948) (internal footnotes omitted). The right is intended for the benefit of the defendant, so that "the public may see he is fairly dealt with and not unjustly condemned, and that the presence of interested spectators may keep his triers keenly alive to a sense of their responsibility and to the importance of their

functions." Waller v. Georgia, 467 U.S. 39, 46 (1984) (quoting Gannett Co. v. DePasquale, 443 U.S. 368, 380 (1979)).

Given the magnitude of the right at stake, "[t]he presumption of openness may be overcome only by an overriding interest based on [specific, articulated] findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." Waller, 467 U.S. at 45 (quoting Press-Enter. Co. v. Superior Ct. of Cal., 464 U.S. 501, 510 (1984)). In Waller, the United States Supreme Court set forth a four-pronged analysis that courts must follow in determining whether the closure of a courtroom is necessary:

> [1] the party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, [2] the closure must be no broader than necessary to protect that interest, [3] the trial court must consider reasonable alternatives to closing the proceeding, and [4] it must make findings adequate to support the closure.

467 U.S. at 48. In the absence of this analysis, a complete closure of a courtroom constitutes structural error, because the deprivation of the right to a public trial "affect[s] the framework within which the trial proceeds, rather than simply an error in the trial process itself." Arizona v. Fulminante, 499 U.S. 279, 310 (1991) (citing Waller, 467 U.S. at 49); see also Waller, 467 U.S. at 49 n.9; cf. Wilder v. United States, 806 F.3d 653, 661 (1st Cir. 2015).

It was "well settled" under Waller and Press-Enterprise (which held that the First Amendment right to open trials extends to jury selection, 464 U.S. at 505) that the Sixth Amendment right to a public trial encompasses jury empanelment. Presley v. Georgia, 558 U.S. 209, 213 (2010) (per curiam).

Nevertheless, well after the Supreme Court issued its decisions in Waller and Press-Enterprise in 1984, the prevailing practice in Brockton Superior Court and certain other Massachusetts trial courts appears to have been to close the courtrooms during jury

empanelment. In a series of recent cases before the Supreme Judicial Court ("SJC"), state prisoners have challenged their convictions based on the complete closure of courtrooms during empanelment. See, e.g., Commonwealth v. Weaver, 54 N.E.3d 495 (Mass. 2016), aff'd sub nom. Weaver v. Massachusetts, No. 16-240, 2017 WL 2674153 (U.S. June 22, 2017); Commonwealth v. LaChance, 17 N.E.3d 1101 (Mass. 2014); Commonwealth v. Alebord, 4 N.E.3d 248 (Mass. 2014); Commonwealth v. Morganti, 4 N.E.3d 241 (Mass. 2014); Commonwealth v. Lavoie, 981 N.E.2d 192 (Mass. 2013). In such cases, the closures were initiated by court security officers, without the knowledge of the trial judge; accordingly, the requisite analysis set forth in Waller was not performed. Having been denied post-conviction relief in the Massachusetts courts, many of these prisoners have filed habeas petitions in the United States District Court for the District of Massachusetts.

With this backdrop set, the court recites the facts underlying Petitioner's claim.[1] On December 29, 2000, a Plymouth County grand jury indicted Petitioner on one count of second-degree murder in violation of Mass. Gen. Laws ch. 265, § 1. Not. Manual Filing Resp't's Suppl. Ans. 84 [#16]. Trial commenced in the Brockton Superior Court with jury empanelment on February 3, 2004. Alebord, 4 N.E.3d at 250-51. Without objection from trial counsel and in the absence of an order by the trial judge, but consistent with the aforementioned "custom and practice at the time in that court," court officers closed the courtroom to the public for the duration of the eighty-minute jury empanelment. Id. at 250, 253 nn.9&10. At Petitioner's request, the court conducted individual juror *voir dire* at sidebar. Id. at 252. On February 5, 2004, the jury found Petitioner guilty. Id. at 250.

---

[1] The facts are "set forth . . . as recounted by the SJC, . . . supplemented by other consistent facts in the record." See Lee v. Corsini, 777 F.3d 46, 51 (1st Cir. 2015).

3

On December 28, 2006, in a consolidated appeal, the Massachusetts Appeals Court affirmed Petitioner's conviction and the denial of his first motion for a new trial. Commonwealth v. Alebord, 859 N.E.2d 440, 442 (Mass. App. Ct. 2006). Petitioner, who had not raised the issue of courtroom closure in his first new-trial motion or in the consolidated appeal, addressed the issue in 2008 in a second motion for a new trial. Alebord, 4 N.E.3d at 250.

At an evidentiary hearing in the Superior Court, Petitioner presented testimony that his then-girlfriend and two family members were prevented from entering the courtroom as the jurors entered for empanelment. Id. at 250-51. Trial counsel testified that he did not know at the time that Petitioner's family and then-girlfriend had been prohibited from entering the courtroom. Id. at 251. He testified further, however, that he was aware that the public commonly was excluded from Brockton Superior Court courtrooms during jury empanelment, that in his more than three-and-a-half decades of experience trying cases in the Brockton Superior Court, trial counsel never observed the courtroom open to the public during jury empanelment, and that he had never objected to the public's exclusion. Id. at 252. He further testified that, at the time of trial, he had not been aware that the Sixth Amendment right to a public trial encompassed the jury empanelment process. Id. Petitioner also presented testimony from the attorney in charge of the Committee for Public Counsel Services in Plymouth County, who reported that, prior to 2007, court officers routinely barred the public from courtrooms in the Brockton Superior Court so as to fit the entire venire in the small courtroom. Id. He testified that he did not object to this practice because "[i]t seemed to work that way." Id. at 252-53.

The Superior Court judge found against Petitioner because no closure had been ordered. Commonwealth v. Alebord, No. 2000-00066, slip op. at 5 (Mass. Super. Aug. 20, 2008). On appeal, the Massachusetts Appeals Court held that the courtroom had nonetheless been closed

4

and remanded the case for further proceedings to determine whether Petitioner knowingly waived his right to a public trial either on his own or through counsel. Commonwealth v. Alebord, 953 N.E.2d 744, 750-51 (Mass. App. Ct. 2011).

On remand, the Superior Court judge again denied the new-trial motion. Commonwealth v. Alebord, No. 2000-00066, slip op. at 11 (Mass. Super. Apr. 13, 2012). The Superior Court judge found that, "at the time of trial, [trial counsel] was unaware that a defendant's right to a public trial extended to jury selection"; that "no one told him that any of [Petitioner's] friends or family had been barred from the courtroom"; and "that there was no evidence that either [trial counsel] or [Petitioner] affirmatively assented to the court officers' clearing of the courtroom in advance of empanelment." Id. at 6-7. The judge concluded that the Commonwealth had failed to establish that Petitioner had knowingly and intelligently waived his Sixth Amendment right to a public trial, but that Petitioner's public-trial rights had not been violated because the eighty-minute closure was *de minimis*. Id. at 6-11.

On February 12, 2014, on direct appellate review, the SJC affirmed the Superior Court order denying Petitioner's second motion for a new trial. Alebord, 4 N.E.3d at 256. The SJC agreed with Petitioner that the exclusion of the public constituted a courtroom closure and that the closure was not *de minimis*. Id. at 254 (citing Morganti, 4 N.E.3d at 246). The SJC concluded, however, that Petitioner had waived his right to a public trial because his seasoned trial counsel—who "recalled that the public had been excluded from the court[]room during jury empanelment"—had failed to object to the courtroom's closure. Id. at 251-52. The SJC went on to review the "error in the post[-]conviction context of a challenge to trial counsel's effectiveness in failing to raise the objection," id. at 255, and determined that Petitioner received objectively

5

reasonable representation, id. at 256. On June 16, 2014, the Supreme Court denied Petitioner's petition for a writ of certiorari. Alebord v. Massachusetts, 134 S.Ct. 2830 (2014).

Petitioner's habeas petition pursuant to 28 U.S.C. § 2254(a) is now before this court. In general, habeas review of a claim is precluded when a state court has decided that claim on the basis of an adequate and independent state law ground that is firmly established and regularly followed. Coleman v. Thompson, 501 U.S. 722, 729 (1991); Harris v. Reed, 489 U.S. 255, 262 (1989). One common example of an adequate and independent state law ground for a decision is when "a state court decline[s] to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement." Coleman, 501 U.S. at 729-30. The First Circuit "[has] held, with a regularity bordering on the monotonous, that the Massachusetts requirement for contemporaneous objections is an independent and adequate state procedural ground, firmly established in the state's jurisprudence and regularly followed in its courts." Janosky v. St. Amand, 594 F.3d 39, 44 (1st Cir. 2010) (citations omitted).

Here, the SJC concluded that Petitioner procedurally waived his right to a public trial because "defense counsel, who had practiced extensively in Brockton Superior Court, testified that he was aware that the court[]room was closed to the public during empanelment to facilitate jury empanelment, and that he did not object thereto." Alebord, 4 N.E.3d at 255. Because the SJC decided the claim on an independent and adequate state procedural ground, review by this claim is barred unless Petitioner can establish cause for the default and prejudice as a result of the alleged violation of law.[2] Coleman, 501 U.S. at 750. To establish cause, Petitioner must show

---

[2] Procedural default also may be excused upon a showing that "failure to consider the claim[] will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750. Petitioner does not make that showing here.

6

"that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." Murray v. Carrier, 477 U.S. 478, 488 (1986). Petitioner also must show "actual prejudice resulting from the errors of which he complains." United States v. Frady, 456 U.S. 152, 168 (1982) (internal quotation marks omitted).

Ineffective assistance of counsel may provide cause to excuse a procedural default where the representation fell below the standard established in Strickland v. Washington, 466 U.S. 668 (1984). Murray, 477 U.S. at 488. Under Strickland, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness," and that "the deficient performance prejudiced his defense." 446 U.S. at 687-88. "The prejudice prong here is the same as the prejudice requirement of the cause and prejudice standard." Bucci v. United States, 662 F.3d 18, 29 (1st Cir. 2011).

Petitioner does not argue that he has suffered actual prejudice. Instead, relying on Owens v. United States, 483 F.3d 48 (1st Cir. 2007), he argues that prejudice must be presumed because the violation of the right to a public trial creates structural error. However, while Petitioner's habeas petition was pending, the Supreme Court issued its decision in Weaver v. Massachusetts, No. 16-240, 2017 WL 2674153 (U.S. June 22, 2017). There, the Court held:

> [W]hen a defendant raises a public-trial violation via an ineffective-assistance-of-counsel claim, Strickland prejudice is not shown automatically. Instead, the burden is on the defendant to show either a reasonable probability of a different outcome in his or her case or . . . to show that the particular public-trial violation was so serious as to render his or her trial fundamentally unfair.

Weaver, 2017 WL 2674153, at *11. The Court noted that, when the defendant does not simultaneously object but instead raises the issue of courtroom closure on collateral review, "the trial court is deprived of the chance to cure the violation either by opening the courtroom or by explaining the reasons for the closure." Id. at *12.

7

The circumstances surrounding the courtroom closure in Weaver are similar to those here. Weaver also was tried in Massachusetts state court. Id. at *4-5. As in this case, a court officer excluded members of the public from the courtroom during jury *voir dire*; Weaver's mother and her minister were barred from the courtroom. Id. at *5. Trial counsel did not object because he was unaware that the right to a public trial extended to *voir dire*. Id. Considering the denial of Weaver's motion for a new trial on writ of certiorari, the Supreme Court concluded that Weaver had failed to suffer prejudice under Strickland. Id. at *13. The Court observed:

> It is of course possible that potential jurors might have behaved differently if [Weaver's] family had been present. And it is true that the presence of the public might have had some bearing on juror reaction. But here [Weaver] offered no evidence or legal argument establishing prejudice in the sense of a reasonable probability of a different outcome but for counsel's failure to object . . .
> There has been no showing . . . that the potential harms flowing from a courtroom closure came to pass in this case. For example, there is no suggestion that any juror lied during *voir dire*; no suggestion of misbehavior by the prosecutor, judge, or any other party; and no suggestion that any of the participants failed to approach their duties with the neutrality and serious purpose that our system demands.

Id. at *13 (internal citation omitted).

The Court's reasoning in Weaver controls the outcome in this case. Petitioner is not entitled to a presumption of prejudice, and he has not demonstrated that he suffered actual prejudice as a result of the courtroom closure during *voir dire*. For this reason, he has not established the prejudice necessary to excuse procedural default of his claim.

Based on the foregoing, Alebord's <u>Petition for Relief from a Conviction or Sentence by a Person in State Custody</u> [#1] is DENIED.

IT IS SO ORDERED.

Date: July 11, 2017                                         /s/ Indira Talwani  
                                                            United States District Judge